Christina R. PAOLI, Plaintiff,

v.

UNIVERSITY OF
DELAWARE, Defendant.

Civ. A. No. 87–77–JRR.

United States District Court,
D. Delaware.

Sept. 23, 1988.

Joseph M. Bernstein, Wilmington, Del.,
for plaintiff.

Henry N. Herndon and Barbara D. Crowell of Morris, James, Hitchens & Williams, Wilmington, Del., for defendant.

OPINION

ROTH, District Judge:

In this action, the plaintiff, Christina R. Paoli, seeks declaratory relief and compensatory damages against the defendant, University of Delaware (the "University") for alleged violations of her civil rights and for breach of contract. The case arose when Paoli was a student at the University in the College of Education where she was majoring in Elementary Teacher Education. The plaintiff was also working towards completing an optional scholastic program entitled "Bachelor of Science in Education Degree Program in Elementary Teacher Education" (the "Program") offered by the University. Paoli seeks redress from the University for its action denying her permission, after she failed a prerequisite course, to enroll in the course "EDD 400" which was required for successful completion of the Program. The plaintiff, never having taken EDD 400, failed to complete the Program, but nonetheless graduated from the University with her degree in education.

At this stage of the proceedings, the defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons expressed in this memorandum opinion, the motion is granted.

*The Standard for Summary Judgment*

Rule 56 provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In accordance with this rule, it is not

within the province of the district court to decide issues of fact. The court is limited to determining "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden of proving that no genuine issues of material fact exist rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985). Likewise, to fend off a motion for summary judgment, the nonmoving party must produce specific evidence showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Jersey Central Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir.1985). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Furthermore, reliance on mere assertions in the pleadings is not permissible. *Id.* There must be enough evidence to enable a reasonable jury to find for the nonmoving party on the issue for which summary judgment is sought. *Id.* at 249, 106 S.Ct. at 2510.

Summary judgment may be granted if there is "evidence that is merely colorable ... or [that] is not significantly probative." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). If the nonmoving party fails to make a sufficient showing of an essential element of his case for which he has the burden of proof, the moving party is entitled to summary judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. In deciding whether to grant summary judgment, a court must draw all inferences from the evidentiary sources in the record in a light most favorable to the nonmoving party. *Adickes v. S.H. Cress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Chipollini v. Spenc-er Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.), *cert. dismissed*, — U.S. —, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

*The Factual Record*

The plaintiff matriculated at the University as a full-time student in the fall of 1980. She entered the College of Education in the fall semester of 1982, and at the same time enrolled in the Program. The College of Education offers the Program for students who wish to prepare themselves to become certified teachers. The State of Delaware will grant teacher certification to a graduate who successfully completes the Program.

In the fall semester of 1984, Paoli enrolled in a course offered by the College of Education entitled "EDD 322, Reading in Content Areas" ("EDD 322"). At the conclusion of the semester, Paoli's grade in EDD 322 was officially recorded as an "F." Because completion of a "methods" course [1] such as EDD 322 with a grade of "C" or better is a prerequisite for enrollment in EDD 400, the University denied Paoli permission to take that course in the spring semester of 1985. She was not, however, expelled from the Program. Indeed, she was informed that she could retake EDD 322 in the spring of 1985 and apply to student teach again (in EDD 400) in the fall semester of 1985. (D.I. 24, Doc. No. 2).

Despite the possibility of successfully completing the Program, Paoli chose not to retake EDD 322 in the spring semester of 1985. Instead, she took other courses that provided her with enough credits to complete her degree. In June, 1985, Paoli graduated from the University with the Degree of Bachelor of Science in Education, Cum Laude, with a major in Elementary Education, but without completing the Program. By March, 1987, the plaintiff had accumulated enough teaching expe-

---

1. A "methods" course, as described by both parties, is a course which teaches its students how to prepare and use lesson plans in a real classroom situation. EDD 322 is a methods course in which students learn how to teach reading in subject matter areas such as social studies and science. EDD 400 is a practice teaching course in which students spend a full semester teaching in a public school classroom setting; thus, it uses directly those skills learned in a methods course like EDD 322.

rience that thereafter Delaware granted her teacher certification.

*The Complaint*

The plaintiff seeks relief on two different causes of action. The first action, brought pursuant to 42 U.S.C. § 1983, claims that the University's action in denying her permission to enroll in EDD 400 and complete the Program denied her property without due process of law as guaranteed by the fourteenth amendment to the United States Constitution. The second action claims that the University breached an implied contract between Paoli and the University by arbitrarily and capriciously denying her admission to EDD 400, and thus, the plaintiff alleges, preventing her from completing the Program.[2]

In addition to a declaratory judgment, costs, and reasonable attorney's fees, the plaintiff seeks compensatory damages for her loss of income sustained during the period September, 1985 to September, 1987, during which she was not a certified teacher and therefore could not obtain employment in positions open only to certified teachers.

*Analysis of the Claimed Property Interest*

The plaintiff asks the Court to declare that Paoli had a protected property interest in continued enrollment in the Program. We need not decide that issue because there is no evidence that she was dismissed from the Program. The plaintiff's failure to earn a grade of "C" or better in EDD 322 did not result in her dismissal from the Program. The plaintiff's failing grade in EDD 322 only prevented her from taking EDD 400 in the very next semester. The University informed Paoli that she could retake EDD 322 in the 1985 spring se-

mester and, upon receiving a grade of "C" or better, enroll in and take EDD 400 during the 1985 fall semester. The plaintiff has offered no evidence to counter the University's claim that it took no action that precluded Paoli from completing the Program.

■ The plaintiff would have us conclude that the University, in denying her permission to take EDD 400 in the spring of 1985, the last semester before she was scheduled to graduate, also dismissed her, *as a practical matter*, from the Program. Thus, it appears that the plaintiff is arguing that she had a protected property interest in completing the Program before her scheduled graduation. This argument finds no support in the law.

Although it is true that property interests may take many forms, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), completion of an *optional* scholastic program, at the time that a student desires, is not a protected property interest.[3] As the Supreme Court stated in *Roth*, property interests "are created, and their dimensions are defined by existing rules or understandings that stem from an independent source...." *Id.* at 577, 92 S.Ct. at 2709. For example, in this country, most undergraduate programs of study encompass four years, most law programs are three years, and most medical and dental programs last four years. But there is no authority for the proposition that a student enjoys an absolute right to complete a program of study within the "usual" time period. Some students take less time and others require more to complete satisfactorily graduation require-

---

**2.** Both parties have agreed that if summary judgment is granted as to the first cause of action, the University is also entitled to summary judgment as to the second cause of action. Thus, the Court will not examine the second cause of action, but notes that were we to do so in detail, we would also rule for the defendant on its motion for summary judgment with respect to the second cause of action.

**3.** The plaintiff's cited authority at most stands for the proposition that students have an inter-

est in not being dismissed permanently, in an arbitrary or capricious manner, *from the institutions* they are attending. *See, e.g., Regents of the Univ. of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Board of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *Hankins v. Temple Univ.*, 829 F.2d 437 (3d Cir. 1987); *Mauriello v. The Univ. of Medicine & Dentistry of New Jersey*, 781 F.2d 46 (3d Cir. 1986).

ments.[4] The accepted rules and understandings about secondary education in this country do not require students to complete their programs of study in a definite, inflexible amount of time. Therefore, the plaintiff's argument, that she had a protected property right to complete the Program at the time of her choosing, is without merit.[5]

█ As part of fulfilling this Court's responsibility to make all inferences in the evidentiary record in favor of the nonmoving party, we will assume for the sake of this argument that the plaintiff enjoyed some protected property interest in completing the Program before her graduation. Even assuming, however, that Paoli had such a protected interest, we find that the University acted in neither an arbitrary nor a capricious manner in denying Paoli permission to enroll in EDD 400. Therefore, the defendant is entitled to summary judgment as a matter of law.

As stated earlier, to succeed on a motion for summary judgment, the moving party bears the burden of proving that no genuine issues of material fact exist. Here, the University has shown that since 1982 no student who had failed to earn a grade of "C" or higher in any of the required "methods" prerequisites was allowed to enroll in EDD 400. Thus, the University argues that Paoli was not treated in an arbitrary or capricious manner, but rather in the same way that all other students in her position were treated. Further, the defendant argues that its decision was the result of sound professional judgment free from bad faith or ill will unrelated to academic performance.

To defend a motion for summary judgment, the nonmoving party must state facts that make it clear that there is a genuine issue of material fact for a jury to decide. The plaintiff has not met this burden. The plaintiff relies on *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1986), to argue that she should have been treated the same as others similarly situated. But Paoli offers no evidence that she was treated differently than other students in her position. Although Paoli recites 29 instances of students receiving permission to take EDD 400 after having failed to earn a grade of "C" or better or never having taken certain prerequisites, she fails to identify a single instance where a student was allowed to take EDD 400 after having failed to meet the "methods" prerequisites. In the absence of such evidence of disparate treatment, reliance on mere assertions in the pleadings and briefs is not enough to defeat the University's motion for summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

*Conclusion*

The Court finds as a matter of law that the plaintiff was neither actually nor practically dismissed from the Program and, further, that she enjoyed no property interest in completing the optional scholastic Program at the University at the time of her choosing. Moreover, even if the plaintiff should have enjoyed a property interest in completing the Program by the time of her graduation from the University, the Court finds that the plaintiff would have failed to meet her burden of proving that there is a genuine issue of material fact regarding the University's decision not to allow her to take EDD 400 after she had failed a required "methods" prerequisite course. In the absence of evidence showing that the University's decision was arbitrary or capricious, rather than the result

---

4. For example, Paoli matriculated at the University in the fall of 1980 and graduated in the spring of 1985, five years later. Although she should not be, and is not being, penalized for taking longer than the normal four years to complete a program of study, her own history serves as a relevant example that students often take longer than the "usual" time to graduate.

5. Paoli's argument is weakened further by the fact that she graduated "on time" in June, 1985.

The University's action in denying her admission to EDD 400 did not affect her ability to *graduate* when she desired. The only effect of its action was to delay at least for one semester the date which she could successfully complete the Program. The decision to graduate in June, 1985, without completing the Program was hers. Paoli has failed to offer evidence showing that the University prevented her from both graduating and completing the Program.

of sound professional judgment free from bad faith or ill will unrelated to academic performance, the University's motion for summary judgment would be granted in any event.